UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 1:09-CR-56 |
| v. | ) | |
| | ) | Chief Judge Curtis L. Collier |
| | ) | |
| EDIBERTO SANCHEZ-DIAZ, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM**

Defendant Ediberto Sanchez-Diaz ("Defendant") moved to suppress statements made by him during an interrogation by detectives of the Cleveland, Tennessee Police Department. The motion was referred to United States Magistrate Judge Susan K. Lee, who held a hearing and subsequently filed a report & recommendation ("R&R") recommending Defendant's motion be denied (Court File No. 20). Defendant filed an objection (Court File No. 21). For the following reasons, the Court will **OVERRULE** the objection and will **ACCEPT** and **ADOPT** the R&R (Court File No. 20). Accordingly, Defendant's motion to suppress will be **DENIED** (Court File No. 12).

**I.     RELEVANT FACTS**

Neither party challenges the magistrate judge's account of the testimony and evidence presented at the hearing, which the Court hereby adopts by reference (Court File No. 20, pp. 1-9). The Court will only set forth the facts necessary to this Memorandum. Defendant is charged as an illegal alien in possession of a firearm, in violation of 18 U.S.C. § 922(g)(5). On January 30, 2009, Defendant made incriminating statements regarding a gun during an audio-recorded interview

conducted by a state law enforcement officer, namely Lieutenant Mark Gibson ("Lieutenant Gibson"), a twelve-year veteran of the Cleveland Police Department. Lieutenant Gibson was interviewing Defendant in connection with a homicide investigation. Defendant was arrested on the day of his interview, pursuant to an outstanding warrant issued in November 2008 for aggravated assault. Defendant was 25 years old at the time of the interview and had been arrested a few times before for minor offenses. Defendant's native language is Spanish and he contends he does not read or write at all in the English language and only speaks a little English (Court File No. 18).

Defendant was questioned in an interview room at the Bradley County Justice Center after his arrest on the outstanding warrant. Agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the federal immigration service were monitoring the interview. A Spanish-speaking police officer, Detective Willie Espinoza ("Detective Espinoza"), was present during the questioning and also conversed with Defendant in Spanish on the break. Defendant's feet were shackled but his handcuffs were removed so he could sign papers. Defendant's wife, Amber ("Amber"), was also under arrest for filing some type of false report and she was being questioned by other officers either contemporaneous with or prior to Defendant's interview. Detective Espinoza read Defendant his *Miranda* rights in Spanish and he signed a written waiver of *Miranda* rights form.

The interview lasted approximately 52 minutes. It began with questions about the aggravated assault in 2008, but quickly shifted to the unrelated homicide investigation. Lieutenant Gibson concluded Defendant was not being truthful regarding information important to the homicide investigation. Defendant denied having been at a particular store, then later admitted to having been there. He initially stated he lived in Lebanon, Tennessee, but later admitted he lived in Cleveland, Tennessee, with Amber. He indicated he had lied about his residence because he did not want to

get Amber in trouble.

During a break in the interview, Lieutenant Gibson learned from the ATF agents Amber had revealed a gun buried in her yard. This was the first time Lieutenant Gibson learned of the gun, and he understood the gun belonged to Defendant based on his conversation with the agents. When the interview resumed, Defendant consented to giving a DNA sample and a photograph of his hands. After the sample (mouth swab) and photograph were taken, Lieutenant Gibson began questioning Defendant about the gun buried in the yard. Initially, Defendant stated the gun belonged to Amber's uncle, to which Lieutenant Gibson responded, "Amber says it's yours . . . and . . . that it belongs to you, so I am just trying to decide who needs to be charged with it . . . you or Amber" (Court File No. 19 ("Transcript"), p. 2). Defendant maintained it belonged to Amber's uncle but stated the uncle did not bury it in the yard. *Id*.

Lieutenant Gibson further suggested, "well . . . it's gonna have your prints, your DNA on it" and subsequently, Defendant confirmed he had handled the gun, looked at it, admitted he bought it from Amber's uncle for a hundred seventy dollars and buried it because he knew he was not supposed to have it (Transcript, pp. 2-3). Lieutenant Gibson probed further to see if there was anything else Defendant had to say, asking him to think about Amber, her kids, and reminding him Amber has been lying to protect him. Defendant indicated he had nothing more to add except he had a BB gun (Transcript, pp. 3-5).

## II.  STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the R&R to which objection is made, 28 U.S.C. § 636(b)(1)(C). But *de novo* review does not require the district court rehear witnesses whose testimony has been evaluated by the Magistrate Judge. *See United States v.*

*Raddatz*, 447 U.S. 667, 675-76 (1980). The Magistrate Judge, as the factfinder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting her in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264 (6th Cir. 1999). The Magistrate Judge's assessment of witnesses' testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003).

### III. DISCUSSION

When a defendant claims his confession was coerced, the government bears the burden of proving by a preponderance of the evidence the confession was voluntary. *United States v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003). The Fifth Amendment privilege against compulsory self-incrimination and the Due Process Clause of the Fourteenth Amendment bar the admission of involuntary confessions. *Ellis v. Booker*, 06-CV-12302, 2008 WL 495479 at *4 (E.D. Mich. Feb. 21, 2008) (citing *Colorado v. Connelly*, 479 U.S. 157, 163-4 (1986)). The Sixth Circuit has identified three requirements for finding a confession involuntary due to police coercion: (1) the police activity was objectively coercive; (2) the coercion in question was sufficient to overbear Defendant's will; and (3) the alleged police misconduct was the crucial motivating factor in Defendant's decision to offer the statement. *McCall v. Dutton*, 863 F.2d 454, 459 (6th Cir. 1988).

The voluntariness of a confession is assessed by the totality of all the surrounding circumstances to determine whether it was a product of the defendant's unconstrained free will. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). The surrounding circumstances include both the characteristics of the accused as well as the details of the interrogation. *Id*. Ultimately, the question is "whether, under the totality of the circumstances, the challenged confession was obtained in a manner compatible with the requirements of the Constitution." *Miller v. Fenton*, 474 U.S. 104,

112 (1985).

In the R & R, Magistrate Judge Lee determined Lieutenant Gibson's conduct, "especially his implicit threat to charge Amber with the gun," was objectively coercive (Court File No. 20, p. 12). However, she further determined the conduct was not sufficient to overcome Defendant's will, nor was it the crucial motivating factor in Defendant's decision to confess. Defendant objects and argues Lieutenant Gibson's conduct was sufficient to overcome Defendant's will as he did not want his wife to be arrested. Further, Defendant argues this coercive activity was the crucial motivating factor in his decision to offer incriminating statements about the firearm.

### A. Conduct Sufficient to Overcome Defendant's Will

In his objection, Defendant asserts Lieutenant Gibson's threat against Amber was sufficient to overcome Defendant's will in light of his concern for his wife's well-being. Defendant claims he believed this threat was clear and its effect is evidenced by the shift in tone of the interrogation. "While Mr. Sanchez-Diaz earlier may have been elusive with the detective when asked about his residence, after Detective Gibson threatened to arrest Amber, Mr. Sanchez-Diaz was alert in his answers" (Court File No. 21, p. 2). Defendant also points to the admission of owning a BB gun after Lieutenant Gibson told Defendant to "man up" and tell him anything else that could get "Amber in trouble" (*Id.*, p. 3; Transcript pp. 3-4).

The determination coercive activity overcame a defendant's will "depends on a weighing of the circumstances of pressure against the power of resistance of the person confessing." *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (citing *Stein v. New York*, 346 U.S. 156, 185 (1953)). The circumstances not only include the crucial element of police coercion, but also the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition and mental health. *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993).

The magistrate made the determination Lieutenant Gibson's threat of charging Amber with the gun was objectively coercive. The Court does not take issue with this assessment. However, the remaining circumstances identified in *Withrow* do not support a finding the conduct overcame Defendant's will. The interrogation in its entirety lasted less than an hour and the questioning at issue occurred after Defendant had a break during which he spoke with Detective Espinoza. The interview took place in the Bradley County Justice Center and, although he was only 25 years old, this was not the first time Defendant had been involved with law enforcement because he had been arrested "a few times" for minor offenses (Court File No. 20, p. 2). A court may consider prior experience with the judicial system when determining whether Defendant's will could be overborne. *See Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994) ("[defendant] had prior experience with the criminal justice system and was sufficiently intelligent to appreciate the lessons of that experience"). Defendant's native language is Spanish but he responded to questioning in English and did not utilize Detective Espinoza for additional translation after the *Miranda* rights were given. There is no indication Defendant was otherwise suffering from any mental or physical conditions that would decrease his power of resistance.

Furthermore, the threat to potentially charge Amber with ownership of the gun was mild and not explicit. This threat was only reiterated after Defendant confessed to owning the gun. Defendant indicated the gun belonged to Amber's uncle and maintained this assertion even after Lieutenant Gibson queried whether he should charge Defendant or Amber with its ownership. Defendant insisted Amber's uncle owned the gun up until Lieutenant Gibson stated Defendant's fingerprints would most likely be on the gun because it had been in his house. Thus, Defendant did not succumb to the pressure of Lieutenant Gibson's single threat of charging Amber with ownership because this threat did not alter his insistence the gun belonged to Amber's uncle.

### B. Crucial Motivating Factor

Even if the threat to charge Amber had been sufficient to overcome Defendant's will, the coercion must be the crucial motivating factor in Defendant's decision to give an incriminating statement for the confession to be deemed involuntary. *McCall*, 863 F.2d at 459 (citing *Colorado*, 479 U.S. at 163-164). In assessing the motivation of a confession, temporal proximity between the coercive conduct and the incriminating statement is a persuasive factor. *See United States v. Hunter*, No. 08-3121, 2009 WL 1617886 at *4 (6th Cir. June 11, 2009); *United States v. Finch*, 998 F. 2d 349, 355-56 (6th Cir. 1993). In *Hunter*, the defendant contended his confession was coerced due to the fact the police threatened his girlfriend with a gun charge. In affirming the lower court's denial of the motion to suppress, the Sixth Circuit found despite the police officer's threat to charge the defendant's girlfriend, the intervening introduction of the gun-residue test was a plausible motivating factor. *Hunter*, 2009 WL 1617886 at *4 ("[defendant] confessed immediately after Sergeant Frazier threatened to administer the gun residue test . . . . The gun-residue test was just as plausible a motivating factor as the threat to bring federal charges against [his girlfriend]"). By contrast, in *Finch*, Defendant immediately responded to the threat by confessing and testified the threat was the motivation for confessing. 998 F.2d at 355 ("[D]efendant was told that if any cocaine was discovered, all three persons in the house could be arrested unless one person admitted sole ownership." The defendant immediately directed the officers to the cocaine and testified "he disclosed the location of the cocaine to the police so that his mother would not be arrested.")

In his objection, Defendant claims the motivating factor to admit to ownership of the gun was clearly Detective Gibson's threat of arresting Amber. In support of his assertion, Defendant offers the change in his responses from evasive to direct after the threat was posed as well as the additional threat of discovering Amber's prints and DNA on the gun. Defendant also points to the conflicting

testimony between Amber's uncle regarding the gun transaction and what Defendant told Lieutenant Gibson as evidence Defendant's testimony was involuntary.

As discussed above, Defendant's responses continued to be evasive after the threat to charge Amber. Defendant wrongfully asserts the gun belonged to Amber's uncle both before and after the threat. Responses such as "it belongs to her uncle" and "it's not illegal for him to own a handgun" following Lieutenant Gibson's threat to charge Amber with ownership do not reflect the immediate cause and effect demonstrated in *Finch*. The time between the coercive activity and Defendant's admission was only a minute, much less than in *Hunter*, where the threat occurred in the police car and the subsequent admission occurred after the defendant was being questioned at the police station. However, as in *Hunter*, Lieutenant Gibson's intervening conduct of referring to forensic evidence, namely the DNA and prints on the gun, was sufficient to be the motivating factor causing Defendant's confession.

After Lieutenant Gibson intimated the gun would "have your prints, your DNA on it," Defendant responded he had the gun, it was in his house, he handled it, looked at it and he bought it from Amber's uncle (Transcript p. 2). This was the crucial point where Defendant's responses shifted from maintaining Amber's uncle as the owner to admitting he actually owned and purchased the gun. In his objection, Defendant attributes this shift to a fear *Amber's* DNA and prints would be on the gun and his desire to protect her. Defendant further offers the testimony of Amber's uncle, Arnold Voyles ("Voyles"), who stated he sold the gun to Amber for $100 as showing Defendant was not the one who purchased, handled, or buried the gun. Defendant may have also feared Amber's prints would be on the gun, however, the Court finds this was not the crucial motivating factor in offering the confession. Defendant had, just moments before, proffered a DNA sample. He had continued in his assertion Voyles was the owner of the gun despite a threat Amber may be

charged, and in direct response to Lieutenant Gibson's remark the gun would have *his* DNA on it, admitted the gun had been in his house and he had handled it and purchased it from Amber's uncle. As in *Hunter*, the threat of forensic evidence was the motivating factor rather than the threat to charge Amber.

As to the conflicting testimony between Voyles and Defendant regarding the circumstances of the gun purchase, neither account is inconsistent with Defendant's actual ownership and possession of the gun. Even if Voyles had sold it to Amber initially, this does not preclude Defendant from possessing and controlling the gun as it was kept buried in the yard of the home he shared with his wife. It is equally plausible Defendant gave Amber the money to purchase the gun from her uncle thus, Voyles may never have known who the buyer was. The Magistrate Judge's assessment of witnesses's testimony is entitled to deference. *Irorere*, 69 F. App'x at 236. The Magistrate Judge's credibility determination is supported by substantial evidence and is not clearly erroneous.

Neither Voyles's testimony nor the potential presence of Amber's DNA on the gun support a finding the crucial motivating factor for Defendant's confession was the coercive activity. Rather, the coercive activity of threatening to charge Amber was insufficient to overcome the will of Defendant and thus was not the crucial motivating factor for his confession.

## IV. CONCLUSION

Based on the totality of the circumstances, the Court holds Lieutenant Gibson's coercive activity did not overbear Defendant's will and therefore was not the crucial motivating factor in his confession to owning the gun. Accordingly, the Court will **OVERRULE** the objection (Court File No. 21) and will **ACCEPT** and **ADOPT** the R&R (Court File No. 20). Defendant's motion to

suppress is **DENIED** (Court File No. 12).

An Order shall enter.

/s/
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**